**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JAMES M. LINICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-635 C |
| | ) | |
| THE UNITED STATES, | ) | Judge Thomas C. Wheeler |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S STATEMENT OF THE CONTESTED FACTUAL ISSUES, STATEMENT OF THE PROPOSED CONCLUSIONS OF LAW, WITNESS LIST AND PROPOSED TRIAL EXHIBIT LIST**

Pursuant to the Rules of the United States Court of Federal Claims, and as required by the Court's Pretrial Order of July 26, 2011 (Dkt. No. 20), Plaintiff James M. Linick ("Plaintiff" or "Linick"), submits to this Court and to the United States ("Government" or "Defendant"), the following information: (a) a separate statement of the contested factual issues to be addressed at trial, and as to each issue, the contentions of fact that counsel expects to prove at trial; (b) a statement of the proposed conclusions of law that counsel believes will be established, along with the citation to the lead case(s) counsel relies upon; (c) a final list of the persons counsel expects to call as witnesses at trial, including each person's full name and address; and (d) a final list of exhibits counsel expects to offer into evidence at trial.

## A. PLAINTIFF'S STATEMENT OF THE CONTESTED FACTUAL ISSUES

Plaintiff herewith submits the following contested factual issues to be addressed at trial, including, as to each issue, the contentions of fact that counsel expects to prove at trial.

Stipulated facts, shown in bold below, have been included as they appear in the signed stipulation, for ease of understanding the chronology and narrative of the contested facts.

Issue 1: Before the imposition of the Secrecy Order, Mr. Linick was successful in marketing his TCM inventions.

**1. Mr. Linick is a Professional Engineer who holds multiple United States patents related to what he calls "trajectory correctable munitions" or ("TCM") technologies. (Joint Stipulated Fact 1).**

**2. United States Patents that have been issued to Mr. Linick include U.S. Patent Nos. 6,722,609 (filed Feb. 13, 1998); 5,988,562 (filed Nov. 5, 1997); 5,647,558 (filed May 1, 1995); 5,131,602 (filed June 13, 1990); 4,886,330 (filed June 30, 1987); 4,679,748 (filed June 25, 1984); 4,453,087 (filed July 27, 1981); 4,407,464 (filed July 27, 1981); and D247,615 (filed Jan. 21, 1976). (Joint Stipulated Fact 2).**

3. Mr. Linick's most recent United States patents are directed to munitions technologies, including Trajectory Correctable Munitions ("TCM"), and relate further to a technology which can be retrofitted on most existing artillery rounds, while providing a significant increase in lethality and accuracy.

4. Mr. Linick's inventions are generally advantageous over existing technologies because of their lower cost and relative ease of development.

5. Mr. Linick has worked for many years in the area of intelligent or guided munitions, both in the United States and Europe.

6. Throughout his career, Mr. Linick has consulted for and with numerous defense contractors, including Teledyne-Brown Engineering, Bofors AB of Sweden, Contraves, and Raytheon.

7. Mr. Linick has also held the position of President of several consulting firms.

8. Throughout the mid-to-late 1990's, Linick met and corresponded with Bofors Weapon Systems Division of Bofors AB of Sweden ("Bofors") regarding his inventions and existing technologies.

**9. Mr. Linick licensed to Bofors U.S. Patent Nos. 5,131,602 and 5,647,558, as well as Swiss Patent No. 674,587 ("Bofors Patents"). (Joint Stipulated Fact 24).**

10. Mr. Linick assigned to Bofors U.S. Patent Nos. 5,131,602 and 5,647,558, as well as Swiss Patent No. 674,587.

11. The '602, '558 and '587 patents were licensed and assigned to Bofors Weapon Systems Division of Bofors AB of Sweden as part of 1995 and 1997 agreements between Mr. Linick and Bofors.

12. As part of the 1995 and 1997 Agreements with Bofors, Mr. Linick agreed to render technical assistance to Bofors.

13. The 1995 and 1997 agreements culminated in Bofors's payment of a $2 million lump sum to Mr. Linick. The 1997 agreement further required

Bofors to pay Linick an additional $37,500.00 (thirty seven thousand, five hundred dollars) per quarter for five years, and was renewed in 2002 for another five years, at the option of Bofors, for a total of $1.5 million (one-and-a-half million dollars). Accordingly, Mr. Linick received a total of $3.5 million from Bofors.

14. On July 27, 1999, a meeting was held with technical personnel at Picatinny Arsenal regarding Mr. Linick's U.S. Patent Nos. 5,131,602 and 5,647,558 related to a vertical reference system and an impulse motor system.

15. United States Army Personnel at Picatinny Arsenal expressed interested in Mr. Linick's inventions.

16. Also during 1999, Mr. Linick and his representatives communicated with Alliant Techsystems Inc., Lockheed Martin and Eric Womble (legislative assistant to then-Senator Trent Lott) regarding trajectory correctable munitions.

17. Beginning in February of 2000, Mr. Linick and his representatives began corresponding with Major General Toney Stricklin, Commanding General of Fort Sill and the United States Army Field Artillery Center.

18. Also in 2000, Mr. Linick and his representatives communicated with representatives of Talley Industries Inc. and Rheinmetal GmbH regarding trajectory correctable munitions.

19. On February 9, 2001, Mr. Linick filed U.S. Provisional Patent Application No. 60/267,416 with the United States Patent and Trademark Office.

20. On February 19, 2001, Mr. Linick met with Dr. Christian Klee of DIEHL Munitions Systeme GmbH & Co in Germany.

21. Also in 2001, Mr. Linick and his representatives communicated with Raytheon regarding trajectory correctable munitions.

22. DIEHL expressed interest in further cooperation with Mr. Linick.

**23. On February 11, 2002, Mr. Linick filed patent application serial number 10/071,215, which he asserts is an improvement to his TCM technology. (Joint Stipulated Fact 13).**

24. Simultaneously with the ‘215 Application, Mr. Linick filed the related Patent Cooperation Treaty application PCT/US02/03879 on February 11, 2002 (hereinafter “PCT Application” or “related PCT Application”).

25. Mr. Linick’s Patent Application Serial No. 10/071,215 (“the ‘215 Application”) is directed to an orientation reference system for a munition which operates using a particularized sensor and deployment mechanism.

26. On July 24, 2002, a senior engineer with the technology division of the Marine Corps, Mr. Forrest R. Lindsey, expressed his interest in meeting with Mr. Linick and his representatives.

27. Mr. Linick was unable to attend a meeting with the United States Marine Corps because he was ill during this time.

**28. On August 14, 2002, pursuant to 35 U.S.C. § 181, the United States Patent and Trademark Office ("USPTO") issued a secrecy order covering Mr. Linick's '215 patent application. The United States Army Armament Research Development and Engineering Command ("ARDEC") sponsored the secrecy order. (Joint Stipulated Fact 16).**

**29. On December 11, 2007, the USPTO issued a Notice of Allowability on Mr. Linick's '215 patent application, but withheld the issuance of the patent application due to the secrecy order. (Joint Stipulated Fact 17).**

30. Mr. Linick's Patent Application Serial No. 10/584,615 ("the '615 Application"), a divisional application from the '215 Application filed on February 6, 2008, is directed to a specific type of cargo round. Some embodiments of this invention incorporate one embodiment of an impulse motor apparatus, while others do not.

**31. The USPTO issued a Notice of Allowability on the '615 Application on October 7, 2009, but withheld the issuance of the patent application due to the Secrecy Order. (Joint Stipulated Fact 21).**

32. The '215 and '615 Applications, as well as Patent Application Serial No. 10/584,614 ("the '614 Application," also filed on February 6, 2008),

represent various improvements to Mr. Linick's earlier-developed technologies.

33. **Some of the claims of the '614 Application are directed to an apparatus comprising a rotating munition with a spinning round. (Joint Stipulated Fact 15).**

34. **The USPTO issued a Notice of Allowability on the '614 application on January 4, 2011, but withheld the issuance of the patent application due to the Secrecy Order. (Joint Stipulated Fact 19).**

35. Once the Secrecy Order was imposed, Mr. Linick was unable to disclose the details of his technology to qualified contractors or corporations due to the restrictiveness of the Order.

Issue 2: Had the Secrecy Order not been imposed, Mr. Linick would not have faced any other legal restrictions that would have prohibited him from marketing and fully disclosing his inventions.

36. Pursuant to 22 C.F.R. §125.2(b), if the Secrecy Order had never been imposed on Mr. Linick's patent applications, the International Traffic in Arms Regulations ("ITAR") and other related export regulations would not apply to Mr. Linick's inventions once they were published in a patent document such as a PCT application.

37. Without the Secrecy Order, there would have been no legal restrictions preventing Mr. Linick from marketing and fully disclosing his inventions

to foreign governments after the publication of his inventions by the Patent and Trademark Office.

Issue 3: Subsequent to the imposition of the Secrecy Order, Mr. Linick suffered damages resulting from interference with his right to compete in the market.

38. Mr. Linick's entire consulting business was based on his ability to disclose and then market his engineering concepts to potential purchasers.

39. No ITAR license is required for an export of technical data within the scope of a U.S. application for which a foreign filing license has been granted, either directly or by the lapse of the six-month waiting period. *See* 22 C.F.R. § 125.2(b); 37 C.F.R. § 5.11(a)(1).

40. Had the Secrecy Order not been imposed on the '215 Application, Mr. Linick would have been able to disclose and describe his inventions, to the extent disclosed in his patent applications, to foreign governments six months after the filing date of the '215 Application, or after the publication of the PCT Application.

41. Under the ITAR regulations, when conforming presentations to information disclosed within patent applications for which no secrecy order has been issued, an engineer such as Mr. Linick is in a position to make presentations to solicit interest from potential customers without obtaining any license as required by the ITAR.

42. In marketing his inventions, Mr. Linick's practice was to interest buyers in his innovative concepts, and to then subsequently negotiate on the degree

of consultation required for the detailed engineering on a particular project.

43. In Mr. Linick's consulting engineering business, his business opportunities were required to be exploited very quickly because needs of defense agencies, both domestic and foreign, are based on perceived immediate security requirements, and the particular interest expressed by defense agencies.

44. Because relationships with qualified contractors and corporations, as well as with prospective user licensees, formed the sole basis for Linick's business, his inability to form such relationships due to the Secrecy Order abruptly brought the basic foundation for Mr. Linick's business to a halt.

45. After the imposition of the Secrecy Order, Linick became unable to keep pace within the marketplace and disclose his technology with the required speed.

46. Prospective users and licensees of the invention have been (and continue to be) unable to license Linick's invention, or even evaluate it for themselves.

47. Interactions with Raytheon became difficult when the Secrecy Order prevented Linick's representatives from answering the company's questions regarding a potential warhead for the TCM round.

48. Subsequent to the imposition of the Secrecy Order, Mr. Linick and his representatives continued to attempt to form business alliances based on Linick's publicly known technologies.

49. Mr. Linick has continued to face the same difficulty in his most recent efforts to market his inventions within the confines of the Secrecy Order, including during his 2010-2011 interactions with Mitsubishi Bank, Bentley Associates, Westbury Group, the Chertoff Group, LLC and Samuels International Associates.

Issue 4: Subsequent to the imposition of the Secrecy Order, Mr. Linick lost profits as a result of interference with business opportunities.

50. Prior to imposition of the Secrecy Order, Mr. Linick was extremely active and quite successful in forming business relationships in order to develop and market his technologies, especially with government officials and private contractors.

51. Mr. Linick successfully profited from his inventions through correspondence, meetings, and presentations made to the government officials and private contractors.

52. Mr. Linick has not been able to form profitable business alliances as he previously did with companies such as with Rexham Aerospace, Teledyne Brown, and Bofors.

53. The global market for defense spending has changed dramatically in the time Mr. Linick's inventions have been subject to the Secrecy Order, and

accordingly, Mr. Linick's ability to profit from the '215 Application (and related divisional applications) has been substantially diminished.

54. Mr.  Linick's ability to take advantage of, and earn profits from, business opportunities has effectively been prevented by the imposition of the Secrecy Order.

Issue 5: Subsequent to the imposition of the Secrecy Order, Mr. Linick suffered damages resulting from loss of foreign patent rights and he is unable to market his inventions to foreign governments.

55. Mr. Linick actually filed a PCT Application disclosing inventions embodied in the '215 Application, '614 Application and '615 Application, and intended to pursue foreign rights to these inventions through that PCT Application.

56. Due to imposition of the secrecy order, Mr. Linick's representatives were forced to abandon the PCT application corresponding to the '215 Application.

57. In 2003 and 2004, Mr. Linick and his representatives entered into discussions with the Japanese government regarding the possible use of Mr. Linick's technologies, however, Mr. Linick's counsel was unable to provide specific details regarding the '215 Application because of the Secrecy Order.

58. Mr. Linick met with Japanese government officials in April 2004, but was still restricted by the Secrecy Order and could not give any details relating to the ‘215 Application.

59. Also in 2004, Mr. Linick’s representatives provided a summary of Mr. Linick’s inventions to two individuals who had contacts within the Israeli government. However, due to the Secrecy Order, the technology relevant to the ‘215 application could not be disclosed by Mr. Linick or his representatives.

60. In 2005, Mr. Linick’s representatives made contact regarding Mr. Linick’s inventions with Colonel Naretrak Thitathan of the Office of the Defense and Military Attache of the Royal Thai Embassy; and in 2006, with Lt. Colonel Wanadee Tosuwan, however, Mr. Linick’s counsel was unable to provide specific details regarding the ‘215 Application because of the Secrecy Order.

61. Mr. Linick subsequently traveled to Thailand and met with Thai Military Officials regarding his TCM inventions. However, due to the Secrecy Order, the technology relevant to the ‘215 Application could not be disclosed by Mr. Linick or his representatives.

62. In 2006, Mr. Linick was contacted by representatives of the Defense Ministry of India. He subsequently met with these officials in Delhi, India. However, due to the Secrecy Order, the technology relevant to the

‘215 Application could not be disclosed by Mr. Linick or his representatives.

63. In 2010 and 2011, Mr. Linick corresponded with the People’s Republic of China, and met with representatives of the Korean Government, regarding his TCM inventions. However, due to the Secrecy Order, the technology relevant to the ‘215 Application could not be disclosed by Mr. Linick or his representatives.

64. The Officials at the Korean Embassy were very interested in Mr. Linick’s inventions.

Issue 6: Mr. Linick properly and timely submitted an Administrative Claim over three and a half years ago.

65. On March 12, 2008, subsequent to the allowance of the ‘215 Application, and pursuant to 35 U.S.C. § 183, Mr. Linick properly and timely submitted by certified mail an administrative claim to the Honorable Pete Geren, Secretary of the Army and to General Benjamin S. Griffin, the Commanding General of the Army Material Command, for just compensation based on the imposition of the Secrecy Order on the ‘215 Application.

66. Between March 12, 2008 and the date the above-captioned suit was initiated, Mr. Linick repeatedly contacted John F. Moran, the Chief of Intellectual Property Law Division at the Picatinny Arsenal; Alan P. Klein, Intellectual Property Counsel of the Army; and John J. Fargo, Director of

the Commercial Litigation Branch at the Department of Justice, in an attempt to expedite the process of resolving his claim.

67. On March 3, 2011, Chester L. Jordan II, Patent Counsel of the Army, formally denied Mr. Linick's administrative claim.

Issue 7: Given the realities in the marketplace, seeking modification of the Secrecy Order was not a viable option for Mr. Linick.

68. Since 2002, Mr. Linick has been restricted to discussing information contained within his published United States Patents with potential buyers.

69. Mr. Linick has been unable to advertise the most meritorious advances described in the '215 Application, '614 Application and '615 Application.

70. Without the ability to disclose the most relevant features of his inventions, Mr. Linick has been unable to develop a potential buyer's initial interest in his inventions to the point where he would have a basis for seeking a modification of the Secrecy Order.

71. As stated in the regulations, "[p]etitions for a permit or modification must fully recite the reason or purpose for the proposed disclosure[.]" 37 C.F.R. § 5.5(b).

72. Due to the number of clients that have consulted with Mr. Linick since 2002, as well as the speed with which the field of consulting engineering moves and the delay which one encounters in obtaining a Government decision on a request for modification of a Secrecy Order, it would have

been unrealistic for Mr. Linick to request a modification of the Secrecy Order for every potential client, as Government delay in acting on any request would bar the effective marketing of Mr. Linick's inventions.

## B. PLAINTIFF'S STATEMENT OF THE PROPOSED CONCLUSIONS OF LAW

Counsel expects to prove the following conclusions of law:

1. As evidenced by the Notice of Allowability issued in each case, the inventions described in Mr. Linick's '215 Application, '614 Application and '615 Application constitute patentable subject matter.

2. Mr. Linick is the sole inventor and owner of the patentable subject matter of the '215 Application, '614 Application and '615 Application.

3. If the Secrecy Order had not been imposed, Mr. Linick's PCT Application would have been published and his '215 Application, '614 Application and '615 Application would have all issued as published United States Patents.

4. Mr. Linick's entire consulting business was based on his ability to disclose and then market his innovative and forward-thinking concepts to potential purchasers.

5. As a result of the Secrecy Order, and beginning in 2002, Mr. Linick was unable to fully disclose and market his inventions, domestically or abroad.

6. Had the Secrecy Order not been imposed, Mr. Linick would not have faced any other legal restrictions that would have prohibited him from marketing and fully disclosing the inventions covered by the ‘215 Application, ‘614 Application and ‘615 Application.

7. Pursuant to 35 U.S.C. § 183, Mr. Linick had the right, beginning on December 11, 2007, to apply to the head of the United States Army for compensation for the damage caused by the order of secrecy. *American Tel. & Tel. Co. v. United States*, 231 Ct. Cl. 360 (Ct. Cl. 1982).

8. Mr. Linick timely and properly submitted an Administrative Claim on March 12, 2008.

9. The March 2008 Administrative Claim included detailed evidence regarding Linick’s background and experience, the development and benefits of the TCM technology and specific business relationships which were hindered or altogether halted by the order of secrecy.

10. 35 U.S.C. § 183 is an absolute liability statute requiring the Government to compensate an applicant for every injury to his business which results from the imposition of a Secrecy Order.

11. 35 U.S.C. § 183 does not require, on its face or otherwise, that an applicant do anything other than simply apply, in order to be eligible for compensation for the damage caused by the Secrecy Order.

12. The Government is responsible for any injury caused to Mr. Linick by virtue of the Secrecy Order.

13. Whether Mr. Linick "could have" taken additional measures to mitigate the harm caused by the imposition of the Secrecy Order is irrelevant to the Court's determination of liability and quantum of damages owed in this case.

14. 35 U.S.C. § 183 does not require that compensation may only be awarded if proven with complete and unequivocal certainty.

15. Logical inferences are required in proving any claim for compensation brought pursuant to 35 U.S.C. § 183.

16. Only bare speculation, unsupported by any evidence, is deemed inadequate support for a legal conclusion. 2 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE, § 401.04[4][c] Joseph M. McLaughlin, ed., (Matthew Bender 2d ed. 2010) ("An evidential hypothesis is used in drawing an inference, through deductive reasoning, from evidence introduced in the trial to a consequential fact. The trier of fact utilizes his or her own general knowledge of life to supply the inferential information. However, when speculation unsupported by evidence is necessary to conclude the hypothesis, the evidence is not relevant and will be inadmissible. Moreover, even though evidence is both relevant and not unfairly prejudicial, it may not be used as 'a

springboard to propound an impermissible inference.'") (citations omitted).

17. Mr. Linick had previously assigned three comparable patents, which disclosed and claimed earlier of his TCM inventions, to Bofors for a total amount of $3.5 million.

18. Mr. Linick has shown "actual damage" as a result of the imposition of the Secrecy Order on the '215 Application and related divisional applications. *Constant v. United States*, 617 F.2d 239, 244 (Ct. Cl. 1980) ("We think the consensus at the hearings was that neither the courts nor the administrative agencies would permit purely speculative damages, but that there would have to be 'real concrete evidence of damage,'[…] 'actual damages[,]' […], or 'perhaps a greater degree of proof or ability to prove damages.'").

19. Had Mr. Linick's '215 Application, '614 Application and '615 Application not been placed under Secrecy Order, Mr. Linick would have been able to sell the inventions embodied in these applications to a buyer, such as a defense contractor or foreign government.

20. During the 2001-2005 time period, Mr. Linick could have sold the inventions covered by the '215 Application, '614 Application, and '615 Application to a prospective buyer for at least $2.5 million.

## C. PLAINTIFF'S WITNESS LIST

Plaintiff will call the following persons at trial as <u>live</u> witnesses:

**1. James M. Linick**
7855 Vizcaya Way
Naples, FL 34108
(239) 594-5223

Mr. Linick, the Plaintiff-in-suit, will testify at trial. Mr. Linick is the inventor and owner of the patent applications placed under Secrecy Order. He is expected to testify about the merits of his TCM inventions, his business practices and dealings (both before and subsequent to the imposition of the Secrecy Order), and the impact of the Secrecy Order on his ability to market inventions. Plaintiff anticipates that the direct examination of Mr. Linick will take 4-5 hours.

**2. John F. Moran**
Chief, Intellectual Property Law, HQ, US Army Armament Research Development and Engineering Command
Armament Research, Development and Engineering Center
ATTN: AMSRD-AAR-GCL
Picatinny Arsenal, NJ 07806-5000
(973) 724-6590

After Mr. Linick's Administrative Claim was initially filed, it was assigned to Mr. Moran for investigation. Mr. Moran therefore will testify as to the reasons for the imposition (and subsequent renewals) of the Secrecy Order on Mr. Linick's patent applications, the United States Army evaluation of Mr. Linick's inventions, its technical analysis of Mr. Linick's technologies and the Army's procedures for processing requests to modify secrecy orders. Recognizing that Mr. Moran is not located "within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection[,]" as required by R.C.F.C. 45(b)(2)(B), Plaintiff submits concurrently with this Memorandum a motion for good cause as mandated by R.C.F.C. 45(b)(2)(D). Plaintiff expects that the direct examination of Mr. Moran will take 2-3 hours.

Plaintiff further anticipates that the deposition testimony of the following witnesses will certainly be offered at trial:

**3. Thomas J. Scott, Jr.**
Goodwin Procter LLP
901 New York Avenue N.W.
Washington, D.C. 20001
(202) 346-4332

The subject matter of Mr. Scott's deposition testimony relates generally to Mr. Linick's efforts to market his inventions, to the extent permitted by the Secrecy Order, both domestically and abroad. Plaintiff submits that Mr. Scott's deposition testimony will be offered pursuant to R.C.F.C. 32(a)(4)(E), which allows "[a] party [to] use for any purpose the deposition of a witness, whether or not a party, if the court finds: [...] (E) on motion and notice, that ***exceptional circumstances*** make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." (Emphasis added). There can be little doubt that the circumstances of the present case — in which Plaintiff's counsel was deposed as a fact witness — is the unusual and exceptional circumstance contemplated by the Rules of this Court. Indeed, Mr. Scott will be Plaintiff's lead counsel at the trial. In this sense, Mr. Scott is "unavailable" to give testimony at the trial, and should be permitted to testify only through his deposition testimony. Plaintiff submits that this Court has granted motions under the 'exceptional circumstances' standards in less compelling circumstances. *See Bull v. U.S.*, 2005 U.S. Claims LEXIS 416 at *8 - *9 (Fed. Cl., Apr. 19, 2005). Accordingly, Plaintiff submits that the deposition testimony of Thomas J. Scott, Jr., should be permitted pursuant to R.C.F.C. 32(a)(4)(E).

**4. Andrew Durant**
Samuels International
1140 Connecticut Avenue, NW
Suite 950
Washington, DC 20036

The subject matter of Mr. Durant's deposition testimony relates generally to the business relationship between Mr. Durant and Mr. Linick, as well as to Mr. Durant's efforts to market Mr. Linick's inventions to officials within the Korean Government. The parties have agreed to use Mr. Durant's deposition transcript to address relevant matters within Mr. Durant's knowledge, rather than calling Mr. Durant as a live witness during the trial. Accordingly, Plaintiff plans to offer the deposition testimony of Andrew Durant at trial.

**D. PLAINTIFF'S PROPOSED TRIAL EXHIBIT LIST**

Plaintiff herewith submits a final list of the exhibits expected to be offered at trial. The Exhibits are all set forth in chronological order, with the exception of (1) the file documents relating to Mr. Linick's Administrative Claim of March 2008, which are organized separately at Exhibit Nos. 100-124; and (2) the deposition transcripts which will be submitted as exhibits, at Exhibit Nos. 125-126. Additionally, in accordance with the Court's Pretrial Order, Plaintiff submits that a copy of the listed exhibits has concurrently been provided to Defendant.

1. Undated Notes from the File of Vincent Marchese [US 0002-0005 –US 0002-0007]

2. Letter and Report from Joseph Malek, Re: Bofors/C&L- Memo No. 9001-TinCan Final Report (August 21, 1984) [Linick 0680- Linick 0736]

3. Security Classification Guide For Cartridge 105 MM DPICM, XM915/XM916, Armament Research and Development Center, Doverm New Jersey (December 13, 1985) [US 0004-00068 - US 0004-00091]

4. Swiss Patent No. 674,587 (filed May 8, 1987) [Linick 0371-Linick 0404]

5. Exclusive License of Know-How, Licensor: James M. Linick, and Licensee: Bofors (October 9, 1987) [Linick 0859- Linick 0865]

6. Letter from James M. Linick to A.L. Jestice, Rexham (March 16, 1988) [Linick 0058]

7. U.S. Patent No. 5,131,602 (filed June 13, 1990) (Pl. Ex. 2 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

8. Bofors Agreements (February 1995) [Linick 0839- Linick 0858]

9. U.S. Patent No. 5,647,558 (filed May 1, 1995) (Pl. Ex. 3 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

10. Summary of Patent Assignment to Bofors (Rev. August 5, 1996) [Linick 0829- Linick 0832]

11. Bofors Agreements (February 1997) [Linick 0809- Linick 0828]

12. Letter and materials from James M. Linick to Thomas J. Scott, Jr. Re: New Ideas and Concepts (August 25, 1997) [Linick 1930- Linick 1934]

13. U.S. Patent No. 5,988,562 (filed Nov. 5, 1997) (Pl. Ex. 7 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

14. U.S. Patent No. 6,722,609 (filed Feb. 13, 1998) (Pl. Ex. 8 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

15. Discussion Between Mr. Jan-Olov Blix/Bofors Weapons Systems and Mr. James Linick on March 25, 1998 Regarding the "Invention Impulse Motor and Means to Correct Projectile Trajectory" (March 25, 1998) [Linick 0739]

16. Letter from Thomas J. Scott, Jr. to The Honorable Curt Weldon, Re: Inventions Made By James Linick on Trajectory Controlled Munition (May 25, 1999) [Linick 0428- Linick 0430]

17. Status of Explanation to Members of United States Army anf Other Defense officials of Invention related to Trajectory Correctable Munitions (TCM) Made By James Linick (June 24, 1999) [Linick 0059- Linick 0061]

18. E-mail from Thomas J. Scott, Jr. to Michael Fisette re: Visit of James Linick to Picatinny Arsenal (July 16, 1999) [Linick 0057]

19. Letter from Thomas J. Scott, Jr. to Mark Goldberg, Esq., Re: Trajectory Controllable Munitions Inventions of James M. Linick (July 26, 1999) [Linick 0362]

20. Presentation Materials for Trajectory Correctible Monitor Inventions of Mr. James M. Linick Presented to Alliant TechSystems, Hopkins, Minnesota (July 26, 1999) [Linick 0451- Linick 0487]

21. Outline of Meeting with Picatinny Arsenal Technical Personnel (July 27, 1999) [Linick 0016 – Linick0054]

22. E-mail from Vincent P. Marchese to Michael Fisette, et al., Re: Linick Meeting (July 27, 1999) [US 0001-00954 - US 0001-00955]

23. E-mail from John F. Moran to Robert J. Parise, FW: Linick Meeting (July 28, 1999) (unredacted) [US 0001-00909; US 0001-00956; US 0001-00957]

24. E-mail from John F. Moran to Francis A. Cassidy FW: Linick Meeting, and earlier e-mail chain (July 29, 1999) (unredacted) [US 0001-00954 - US 0001-00955; US 0001-00958 - US 0001-00959]

25. Letter from Thomas J. Scott, Jr. to Vincent P. Marchese (August 9, 1999) with enclosures [Linick 0426; Linick 0321- Linick 0361]

26. Letter from Mark Goldberg, Esq., to Thomas J. Scott, Jr. Re: Trajectory Controllable Munitions Inventions of James M. Linick (August 9, 1999) [Linick 0425]

27. Letter from Thomas J. Scott, Jr. to John Summerford Re: Meeting of James M. Linick with Lockheed Martin Personnel (October 6, 1999) [Linick 0421- Linick 0423]

28. E-mail from Thomas J. Scott, Jr. to Vincent P. Marchese (November 14, 1999) [Linick 0420]

29. E-mail from Jay Rhodes to Senator Trent Lott (January 27, 2000) [Linick 0015]

30. E-mail chain between Major General Toney Stricklin, Thomas J. Scott, Jr., and others (February 13, 2000- April 7, 2000) [Linick 0414]

31. Letter from Thomas J. Scott, Jr. to Eric Womble, with enclosures (Feb. 14, 2000) [Linick 0415- Linick 0419]

32. Letter from Thomas J. Scott, Jr. to Mr. George Poole, Re: Description of Trajectory Correctable Munitions Inventions of James M. Linick, with enclosures (March 20, 2000) [Linick 0178- Linick 0224]

33. Letter from Thomas J. Scott, Jr. to Mr. George Poole, Re: Description of Trajectory Correctable Munitions Inventions of James M. Linick (July 7, 2000) [Linick 0413]

34. Letter from Thomas J. Scott, Jr. to Mr. Bill Mogan, Re: Trajectory Correctable Munitions Inventions of James M. Linick (July 10, 2000) [Linick 0411- Linick 0412]

35. Message from James M. Linick to Dr. Sandau, Rheinmetal Weapons and Ammunition, with enclosures (September 16, 2000) [Linick 0441- Linick 0443]

36. Chronology of Prior Efforts on Behalf of James Linick (undated, c. September 2000) [Linick 0309]

37. Letter from Jonathan D. Link to Mr. Fredi Sandau, Rheinmetal GmbH, with enclosures (September 22, 2000) [Linick 0408- Linick 0410]

38. Notes regarding telephone conference with Scott Callaway, Lockheed Martin (December 14, 2000) [Linick 0310]

39. Letter from James M. Linick to Dr. Christian Klee Re: Visit of James M. Linick and team to DIEHL headquarters in Germany. February 19, 20, 2001 and Subsequent Offer of Further Cooperation Attached (March 1, 2001) [Linick 0434- Linick 0440]

40. Subject: Patent Secrecy Order Review (May 22, 2001) [US 004-00002 - 004-00004]

41. Non-Disclosure Agreement with DIEHL Munitions (July 2, 2001) [Linick 0405- Linick 0407]

42. Undated Presentation Materials to DIEHL Munitions (c. 2001) [Linick 1935-Linick 2056]

43. Letter from James M. Linick to Mr. Donald Rumsfeld (November 6, 2001) [Linick 0431]

44. Letter from James M. Linick to Mr. Donald Rumsfeld (December 5, 2001) [Linick 0014]

45. Response from Kenneth J. Oscar, Re: December 5, 2001 Letter to Mr. Donald Rumsfeld (December 19, 2001) [Linick 0013]

46. E-mail from Thomas J. Scott, Jr. Chris Herstrom of Raytheon Re: Trajectory Controllable Munitions Inventions of James M. Linick (December 21, 2001) [Linick 0012]

47. E-mail from Thomas J. Scott, Jr. to Chris Herstrom (Raytheon) Re: Trajectory Correctable Munitions Inventions by Jim Linick (February 6, 2002) [Linick 0449]

48. File history of U.S. Patent Application Serial No. 10/071,215 (filed February 11, 2002) [Linick 2057- Linick 2287; Linick 2647- Linick 2649]

49. E-mail exchange between Michael A. Chiefa, Kern W. Strickland, Kathryn E. Vander Sande, et al., Re: Annual Security Review of Patent Application (July 15, 2002) (unredacted) [US 0004-00015 - US 0004-00016]

50. E-mail from Kern Strickland to Kathryn Vander Sande Re: Annual Security Review of Patent Application (August 6-7, 2002) [US 004-00021]

51. Subject: Annual Security Review of Patent Application (August 7, 2002) [US 004-00014]

52. E-mail from Thomas J. Scott, Jr. to Chris Herstrom (Raytheon) Re: Trajectory Correctable Munitions Inventions by Jim Linick (October 28, 2002) [Linick 0448]

53. E-mail chain between Officials at United States Marine Corps and Thomas J. Scott, Jr. (July 2-3, 2002) [Linick 0444- Linick 0445]; (July 23-24, 2002) [Linick 0446- Linick 0447]; (July 26, 2002) [Linick2688]; (July 27, 2002-August 5, 2002) [Linick 0311-Linick 0313]; (July 27, 2002) [Linick 2689-Linick 2713].

54. E-mail from Kern Strickland to Kathryn Vander Sande Re: Annual Patent Secrecy Order Reviews (July 9, 2003) (unredacted) [US 0004-00020 - US 0004-00023]

55. Recommendation to the Commissioner of Patents and Trademarks for Renewal of Secrecy Order by Diane R. Winter (August 5, 2003) [US 0004-00017 – US 0004-00019]

56. E-mail from Thomas J. Scott, Jr. to Kenneth E. deGraffenreid Re: Short Presentation re Trajectory Controlled Munitions Development, with attachments (February 26, 2004) [Linick 0001- Linick 0007]

57. E-mail from Thomas J. Scott, Jr. to Angelo M. Codevilla Re: Short Presentation re Trajectory Controlled Munitions Development, with attachments (February 26, 2004) [Linick 0008- Linick 0011]

58. Letter from Eric Shimp to Thomas J. Scott, Jr., et al., Re: April 8 details for Mr. Linick[‘s visit to Japan] (March 31, 2004) [Linick 0611]

59. E-mail from James M. Linick to LTC Takeshi Hirano RE: TRAK [MUNITIONS] (July 2, 2004) [Linick2714]

60. Recommendation to the Commissioner of Patents and Trademarks for Renewal of Secrecy Order by Diane R. Winter (August 23, 2004) [US 0004-00010- US 0004-00012; US 0005-00299]

61. Letter from Thomas J. Scott, Jr. to Col. Thitathan re: Presentation of Linick and inventions to Thailand Ministry of Defense, with enclosures (March 25, 2005) [Linick 0121- Linick 0176]

62. Recommendation to the Commissioner of Patents and Trademarks for Renewal of Secrecy Order by Diane R. Winter (September 11, 2006) [US 0004-0008 – US 0004-0009]

63. E-mail from Thomas J. Scott, Jr. to Lt. Col. Wanadee Tosuwan Re: Potential Engineering Work in Thailand to be Performed by James M. Linick (December 18, 2006) [Linick 0177]

64. File history of U.S. Patent Application Serial No. 10/584,614 (filed February 6, 2008) [Linick 2288- Linick 2402; Linick 2650- Linick 2686]

65. File history of U.S. Patent Application Serial No. 10/584,615 (filed February 6, 2008) [Linick 2403- Linick 2529]

66. E-mail exchange between Alan P. Klein, Michael Carone and John F. Moran Re: Secrecy Order (April 3, 2008) [US 0005-00363]

67. E-mail from Katie Osborne to Linda Lewis, Re: New Secrecy Order (June 19, 2008) [US 0005- 00238]

68. Letter from Linda Lewis to Commissioner of Patents and Trademark Recommending Secrecy Order (June 20, 2008) [US 0005-00239- US 0005-00240]

69. E-mail from Vincent Marchese to John F. Moran Re: [Redacted] (December 15, 2008) [US 0001-00102 - US 0001-00825]

70. E-mail exchange between John F. Moran and Tony Farina Re: Linick (May 7, 2009) [US 0001-00602; US 0001-00824; US 0001-00102]

71. Draft of Letter from John F. Moran, Esq. to Thomas J. Scott, Jr. Re: Request for Clarification of Status Administrative Claim Submitted by James M. Linick (undated, c. June 2009) [US 0001-00398 - US 0001-00399]

72. E-mail from Ernest Baker, U.S. Army to Jeffrey Kraft; John H. Edwards, John F. Moran and Henry Kerwien Re: Patent Issue (September 9, 2009) [US 0001-00808]

73. Recommendation of the Department of the Army on the Petition to Modify the Secrecy Order (April 15, 2010) [US 0005-00453 – US 0005-00459]

74. Letter from Thomas J. Scott, Jr. to Jeff Henley, Morgan Stanley Smith Barney (April 27, 2010) [Linick 2565-Linick 2566]

75. E-mail from Thomas J. Scott, Jr. to Philip C. Bowers of Bentley Associates Re: Linick/Bentley Non-Disclosure (June 11, 2010) [Linick 2586 -Linick 2587]

76. E-mail from Thomas J. Scott, Jr. to Philip C. Bowers of Bentley Associates Re: Linick/Bentley Non-Disclosure (June 15, 2010) and attachments [Linick 2581 -Linick 2585]

77. E-mail exchange between Thomas J. Scott, Jr. and Philip C. Bowers of Bentley Associates Re: Linick/Bentley Non-Disclosure (June 15, 2010) and attachments [Linick 2576 -Linick 2580]

78. E-mail exchange between Thomas J. Scott, Jr. and Philip C. Bowers of Bentley Associates Re: Linick/Bentley Non-Disclosure (July 14, 2010) [Linick 2771- Linick 2773]

79. Letter from Thomas J. Scott, Jr. to Jeff Henley, Morgan Stanley Smith Barney (July 15, 2010) and enclosures [Linick 2530-Linick 2564]

80. E-mail from Thomas J. Scott, Jr. to Philip C. Bowers of Bentley Associates Re: Brief Explanatory Materials Re: Inventions of James M. Linick (July 15, 2010) and attachments [Linick 2568-Linick 2575]

81. E-mail from Philip C. Bowers of Bentley Associates to James M. Linick and Thomas J. Scott, Jr., et al. Re: Draft Engagement Letter (July 15, 2010) and attachment (Draft Engagement Letter) [Linick 2720-Linick 2726]

82. E-mail from Philip C. Bowers of Bentley Associates to James M. Linick and Thomas J. Scott, Jr. Re: FEDEX of Documents (July 26, 2010) [Linick 2727]

83. E-mail from Dr. Patrick L. Huddie of the Westbury Group LLC to Thomas J. Scott, Jr. et al. Re: Investment Banking Agreement (July 28, 2010) and attachments (Draft Linick-Westbury Investment Banking Agreement and Dr. Huddie Contact Information) [Linick 2728-Linick 2738]

84. E-mail from Dr. Patrick L. Huddie of the Westbury Group LLC to Thomas J. Scott, Jr. and James M. Linick et al. Re: Westbury Engagement Letter (July 29, 2010) and attachments (Drafts of Linick-Westbury Investment Banking Agreement) [Linick2739-Linick2768]

85. E-mail from April Weisbruch to Scott Weber, The Chertoff Group, with attachments (August 16, 2010) [Linick 2591-Linick 2590]

86. Retainer Agreement for Work on behalf of James M. Linick to Market and Sell Certain Patents (September 6, 2010) [Linick 2774- Linick 2776]; Annex I [Linick 2777]; Annex II, Strategic Marketing Plan for TRAK Guidance Systen (Def. Ex. 10 to Durant Dep., Case No. 10-635C, Sept. 8, 2011).

87. E-mail exchange between James M. Linick, Thomas J. Scott, Jr., Andrew Durant, et al., Re: Possible Meeting re: Jim Linick Inventions (September 27-28, 2010) [Linick 2622- Linick 2623]

88. E-mail from April Weisbruch to Scott Weber, The Chertoff Group (August 18, 2010) [Linick 2589- Linick 2613]

89. Letter from James M. Linick to the Embassy of Republic of Korea (December 3, 2010) [Linick 2631- Linick 2632]

90. Letter from Thomas J. Scott, Jr., to Col. Choi Sunyup, with enclosures (December 8, 2010) [Linick 2627- Linick 2630]

91. E-mail from April Weisbruch to Andrew Durant, with attachments (December 8, 2010) [Linick 2617- Linick 2621]

92. E-mail exchange between James M. Linick, Thomas J. Scott, Jr., Andrew Durant, Korean Military Officials et al., Re: Next Meeting with Mr. Linick (January 4-6, 2011) [Linick 2615- Linick 2616]

93. E-mail exchange between Kang S. Kim of the Office of Defense Logistics, Embassy of the Republic of Korea and Thomas J. Scott, Jr. et al. Re: NDA (Jan. 11, 2011) [Linick 2769]

94. E-mail from Thomas J. Scott, Jr. to Kang S. Kim et al. Re: Non-Disclosure Agreement between James M. Linick and Office of Defense Logistics Attache, Embassy of the Republic of Korea, with attachments (Jan. 12, 2011) [Linick 2624- Linick 2626]

95. E-mail exchange between Andrew Durant of Samuels International and James M. Linick et al. Re: ROK (Feb. 4, 2011) [Linick2770]

96. Letter from Thomas J. Scott, Jr. to Zhao Ning at The Embassy of the People's Republic of China, with enclosures (March 28, 2011) [Linick 2633- Linick 2646]

97. E-mail from John F. Moran to Modesto J. Barbarisi Re: Linick and TCM technology (UNCLASSIFIED) (May 4, 2011) [US 0001-00914]

98. E-mail from John F. Moran to John F. Moran FW: Linick Meeting (UNCLASSIFIED) (August 22, 2011) [US 0004-00063 - US 0004-00064]

99. E-mail from Edwin R. Ackerman to John F. Moran Re: M915 Security Classification Guide (UNCLASSIFIED) (August 22, 2011) [US 0004-00067]

<u>Exhibits related to the Administrative Claim of James M. Linick</u>

100. Letter from Thomas J. Scott, Jr. to The Honorable Mr. Pete Geren Re: Application for Compensation pertaining to Secrecy Order imposed on U.S. Patent Application Serial No. 10/071,215 to James M. Linick, with enclosures (March 12, 2008) (Def. Ex. 2 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

101. Letter from Thomas J. Scott, Jr. to General Benjamin S. Griffin Re: Application for Compensation pertaining to Secrecy Order imposed on U.S. Patent Application Serial No. 10/071,215 to James M. Linick, with enclosures (March 12, 2008) (Def. Ex. 2 to Linick Dep., Case No. 10-118M, Apr. 21-22, 2010).

102. Email sent from Thomas J. Scott, Jr. to John F. Moran, Esq., Re: Administrative Claim and Offer of License Submitted By James Linick re: Secrecy Order, with attachments (March 13, 2008)

103. Letter from Alan P. Klein to Thomas J. Scott, Jr. Re: Administartive Claim of Mr. James Linick for compensation for damage allegedly caused by a secrecy order on U.S. patent application S/N 10/071,215 (March 24, 2008) [US 0005-00361]

104. Email exchange between Thomas J. Scott, Jr. Alan Klein and John F. Moran Re: Follow-up to Voicemail (June 2, 2008)

105. Email sent from Thomas J. Scott, Jr. to John F. Moran, Re: Administrative Claim and Offer of License Submitted By James Linick re: Secrecy Order with attachments (December 15, 2008)

106. Email exchange between Thomas J. Scott, Jr. and John F. Moran, Re: Linick re: Secrecy Order Matter (December 18-19, 2008)

107. Letter from Thomas J. Scott, Jr. to John F. Moran, Re: Supplement to Administrative Claim Submitted by James M. Linick, with attachments (January 29, 2009)

108. Letter from Thomas J. Scott, Jr. to John F. Moran, Re: Request for Clarification of Status Administrative Claim Submitted by James M. Linick (May 1, 2009)

109. Letter from John F. Moran to Thomas J. Scott, Jr., Request for Clarification of Status Administrative Claim Submitted by James M. Linick (May 20, 2009)

110. Email exchange between John F. Moran and Thomas J. Scott, Jr., Re: Response to request for clarification of status of Mr. Linick's admin claim (May 22-26, 2009)

111. Letter from Thomas J. Scott, Jr. to John F. Moran, Re: Submission of Supplemental Material Respecting Administrative Claims Submitted by James M. Linick, without attachments (May 27, 2009)

112. E-mail from Thomas J. Scott, Jr. to John F. Moran, Re: Inquiry re: Status of Administrative Claim of James M. Linick (July 17, 2009)

113. E-mail from Thomas J. Scott, Jr. to John F. Moran and Alan P. Klein, Re: Correspondence re: Administrative Claim of James M. Linick, with attached letter of August 19, 2009 (August 19, 2009)

114. Letter from Thomas J. Scott, Jr. to John J. Fargo, Re: Inquiry Regarding Proposed Litigation Under 35 U.S.C. § 183 (September 28, 2009)

115. Letter from Thomas J. Scott, Jr. to John J. Fargo, Re: Request for Government Consent to Grant of Petition Submitted Under RCFC 27 (January 12, 2009)

116. Letter from Gary L. Hausken to Thomas J. Scott, Jr. (January 15, 2010)

117. Letter from Thomas J. Scott, Jr. to John F. Moran, Re: Administrative Claim Submitted by James M. Linick (June 15, 2010)

118. Email from John F. Moran to Kathleen Fernandez, Re: Administrative Claim Submitted by James M. Linick (UNCLASSIFIED) (July 7, 2010)

119. E-mail from Thomas J. Scott, Jr. to John F. Moran, Alan P. Klein and Gary L. Hausken Re: Response to Email Correspondence from John F. Moran dated July 7, 2010, with attached letter of July 15, 2010 (July 15, 2010)

120. E-mail from Thomas J. Scott, Jr. to John F. Moran, Alan P. Klein and Gary L. Hausken Re: Request for Status Update re: Army's Consideration of Linick Claim (August 10, 2010)

121. E-mail from Thomas J. Scott, Jr. to Gary L. Hausken Re: Allowance of Additional Patent Application of James M. Linick under Secrecy Order (July 15, 2010)

122. Letter from Chester L. Jordan, II (Department of the Army) to Thomas J. Scott, Jr. (February 8, 2011)

123. Letter from Thomas J. Scott, Jr. to Chester L. Jordan, II (February 23, 2011)

124. Letter from Chester L. Jordan, II to Thomas J. Scott, Jr. (March 3, 2011)

Deposition Transcripts

125. Transcript of the Deposition of Thomas J. Scott, Jr., Case 1:10-cv-00635-TCW (July 28, 2011) (Washington, D.C.) (7:10-11:10; 38:11-39:19; 40:21-44:18; 46:8-47:12; 49:13-54:7; 59:1-18; 60:20-63:19; 70:3-71:19; 74:8- 75:17; 80:9-82:11; 82:20- 84:12; 92:1-7; 92:18-95:18)

126. Transcript of the Deposition of Andrew Durant, Case 1:10-cv-00635-TCW (September 8, 2011) (Washington, D.C.) (8:5-12:7; 13:22-14:14; 15:17-17:4; 17:12-18:14; 18:21-21:10; 39:18-41:3; 42:10-49:1; 49:7-50:4; 50:11-52:4)

Due to the ongoing Secrecy Order, Plaintiff plans to request the USPTO for a Modification of the Secrecy Order in order to allow all relevant issues to be discussed at trial (similar to the procedure that was followed during the Rule 27 Deposition of James M. Linick in April 2010). The parties will confer with each other and with the Court to ensure that the procedures for ensuring the confidentiality of the sensitive subject matter involved are set forth in writing before the scheduled trial date.

Respectfully submitted,

JAMES M. LINICK

By his attorney,

/s/

Thomas J. Scott, Jr.
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, DC 20001
Tel: (202) 346−4000
Fax: (202) 346−4444
TScott@goodwinprocter.com

April E. Weisbruch
Of Counsel
GOODWIN PROCTER LLP
901 New York Ave., NW
Washington, DC  20001
Tel:  (202) 346-4000
Fax: (202) 346-4444

Dated:  September 26, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2011, the foregoing **PLAINTIFF'S STATEMENT OF THE CONTESTED FACTUAL ISSUES, STATEMENT OF THE PROPOSED CONCLUSIONS OF LAW, WITNESS LIST AND PROPOSED TRIAL EXHIBIT LIST** was filed with the Clerk of Court using the CM/ECF system, which will subsequently send a Notice of Electronic Filing via email to the following:

GARY L. HAUSKEN, ESQ.
Assistant Director, Commercial Litigation Branch
U.S. Department of Justice – Civil Division
1100 L Street, N.W.
Washington, DC 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345
gary.hausken@usdoj.gov

*Counsel for the United States Government*

Date: September 26, 2011

/s/

April E. Weisbruch
GOODWIN PROCTER LLP
901 New York Ave. NW
Washington, DC 20001
Telephone: (202) 346-4306
Facsimile: (202) 346-4444
AWeisbruch@goodwinprocter.com