**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JAMES M. LINICK,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 1:10-cv-635<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S PROPOSED CONTESTED ISSUES OF FACTS AND CONTENTIONS OF LAW**


TONY WEST
Assistant Attorney General

JOHN FARGO
Director

GARY L. HAUSKEN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

OF COUNSEL:

KATE P. RYZOC
Attorney
Department of Justice


September 26, 2011

Attorneys for the United States

## TABLE OF CONTENTS

I. LINICK HAS NOT ESTABLISHED THAT HE WAS DAMAGED BY IMPOSITION OF THE ORDER ........ 1

A. Alleged Interference with [His] Right to Compete in the Market and Loss of Business Opportunity ........ 5

B. Asserted Loss of Foreign Rights ........ 6

II. ANY INJURY WAS NOT CAUSED BY THE SECRECY ORDERS ........ 7

III. THE ACCRUAL DATE IS ALSO SPECULATIVE ........ 8

IV. MEDICAL ILLNESS IS AN INDEPENDENT CAUSE OF LINICK'S INABILITY TO ENGAGE IN "BUSINESS OPPORTUNITIES" ........ 9

V. LINICK'S CLAIMED COMPENSATION IS ALSO SPECULATIVE ........ 9

**TABLE OF AUTHORITIES**

**Cases**

*Bauer & Cie v. O'Donnell*,
229 U.S. 1 (1913)........................................................................................................ 6

*Bloomer v. McQuewan*,
55 U.S. (14 How.) 539 (1856) ..................................................................................... 5, 6

*Constant v. United States*,
1 Cl. Ct. 600 (Cl. Ct. 1982) (*Constant III*)................................................................ 2, 3

*Constant v. United States*,
16 Cl. Ct. 629 (1989) *(Constant II)*,
*aff'd* 884 F.2d 1398 (Fed. Cir. 1989),
*cert. denied* 493 U.S. 1002 (1989).................................................................................. 7

*Constant v. United States*,
617 F.2d 239, (Ct. Cl. 1980) (*Constant I*)............................................................ passim

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*,
210 U.S. 405 (1908)........................................................................................................ 5

*Decca Ltd. v. United States*,
640 F.2d 1156 (Ct. Cl. 1980) ........................................................................................ 10

*Dow Chemical Co. v. United States*,
226 F.3d 1334 (Fed. Cir. 2000)........................................................................................ 8

*Farrand Optical Co. v. United States*,
325 F.2d 328 (2d Cir. 1963)........................................................................................... 10

*Haynes v. United States*,
1998 WL 852502 (Fed. Cir. Jan. 4, 1998) ............................................................ 7, 8, 9

*Hughes Aircraft Co. v. United States*,
86 F.3d 1566 (Fed. Cir. 1996),
*vacated on other grounds and remanded*, 520 U.S. 1183 (1997),
*reinstated*, 140 F.3d 1470 (Fed. Cir. 1998)................................................................. 10

*Lear-Siegler, Inc. v. United States*,
225 Ct. Cl. 663 (1981) ............................................................................................. 2, 3, 8

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
575 F.2d 1152 (6th Cir. 1978) ........................................................................................ 3

*Sears Roebuck & Co. v. Stiffel Co.*,
376 U.S. 225 (1964) ........................................................ 5

*Tektronix, Inc. v. United States*,
552 F.2d 343 (Ct. Cl. 1977) ........................................................ 4, 10

*Wheaton v. Peters*,
33 U.S. (8 Pet.) 591 (1834) ........................................................ 5

*Zenith Radio Corp. v. Hazeltine Res. Inc.*,
395 U.S. 100 (1969) ........................................................ 6

**Statutes**

28 U.S.C. § 1498 ........................................................ 8

35 U.S.C. § 154(a) ........................................................ 5

35 U.S.C. § 181 ........................................................ 1

35 U.S.C. § 183 ........................................................ 1, 8

35 U.S.C. § 271 ........................................................ 5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JAMES M. LINICK,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 1:10-cv-635<br><br>Judge Thomas C. Wheeler |

**DEFENDANT'S PROPOSED CONTESTED ISSUES OF FACTS AND CONTENTIONS OF LAW**

The Court's Order of July 26, 2011, Docket No. 20, requires each party to submit a "statement of the proposed conclusions of law that counsel believes will be established, along with the citation to the lead case(s) counsel relies upon." The United States offers the following contentions of law.

## I. LINICK HAS NOT ESTABLISHED THAT HE WAS DAMAGED BY IMPOSITION OF THE ORDER

Under 35 U.S.C. § 181 of the Invention Secrecy Act, the Commissioner of Patents is authorized to issue a secrecy order to withhold the publication or grant of a patent application where publication or disclosure would be detrimental to national security. If the Commissioner issues such an order, the patent applicant *inter alia* is granted the right to seek just compensation for damages caused by the secrecy order, if the patent application is otherwise allowable. 35 U.S.C. § 183; *Constant v. United States*, 617 F.2d 239, 240-41 (Ct. Cl. 1980) (*Constant I*). The inventor has the burden of proof in

establishing the amount of the injury. *Id.*; *Lear-Siegler, Inc. v. United States,* 225 Ct. Cl. 663, 665 (1981) ("Lear Siegler must prove its case as to both entitlement and quantum.").

In *Constant*, the court held that the plaintiff had pled sufficient injury to avoid a motion to dismiss:

> (a) [the] plaintiff had begun to develop his invention; (b) the subsequent intervention of the secrecy order was a significant cause of the rejection of plaintiff's applications for loans which were necessary for that development; (c) because of the order [plaintiff] could not demonstrate to prospective users and licensees that his invention represented a superior technology in the field; (d) because of the order prospective users of his invention would not accept or could not evaluate it, and therefore selected the technologies of competitors, and other potential customers were influenced against plaintiff's system; and (e) plaintiff invested personal funds in his hobbled and unsuccessful effort to develop, and also expended substantial attorneys['] fees in his attempts to have the secrecy order rescinded.

617 F.2d at 244. The court took no position on Constant's ability to prove damages; however, the court cautioned the trial court noting that there must be "proper proof of damages." *Id.*

At the trial on remand, the court faced issues similar to the ones before this Court. *See Constant v. United States*, 1 Cl. Ct. 600, 604 (Cl. Ct. 1982) (*Constant III*). The court noted that "[a]lthough a number of companies indicated initial interest, no contracts or offers of contracts resulted." *Id.* at 605. Similar to the present case, "[w]hile plaintiff informed these companies of the imposition of the secrecy order, no letter from any company cited the secrecy order as an element affecting their decision to do, or not do, business with [the inventor.]" *Id.* Also, no potential buyers were called as witnesses to corroborate the allegations that the secrecy order interfered with the inventors efforts to license his invention. *Id.* Additionally, at the time of the plaintiff's invention, the central

market was focused on a different technology, and while the inventor argued his approach had advantages, there was no ready market for the invention. *Id.* The court held that the lack of market for the inventions, the fact that the invention had never been constructed or tested, and the plaintiff's lack of business experience suggested that the imposition of the secrecy order was not the reason for plaintiff's failure. *Id.* at 607. The inventor also never petitioned the Commissioner of Patents to disclose the contentions of his inventions to a potential buyer. *Id.* Therefore, the court held that Constant had failed to demonstrate actual damages or present concrete evident of damages as required by the statute. *Id.* In this case, Linick suffers from the same deficiencies as the claimant in *Constant* – a lack of market interest.

The five factors stated in *Constant I* can be distilled down to three essential elements of proof that Linick must establish: (*i*) Linick must articulate specific injury that he has suffered; (*ii*) the "intervention of the secrecy order [must be] a significant cause" of the injury claimed; and (*iii*) Linick must prove quantum of the damages he suffered. 617 F.2d at 244; *Lear-Siegler*, 225 Ct. Cl. at 665 (the plaintiff "must prove its case as to both entitlement and quantum"). While no case has yet established the burden of proof for a claim of harm caused by imposition of a secrecy order, the Government submits that the proper burden is by clear and convincing evidence. However, regardless of the burden of proof required to establish damages, Linick will fail by either standard.

These elements of proof for a claim of damage caused by imposition of the order are similar to a claim for lost profits resulting from infringement of a patent. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1164 (6th Cir. 1978) ("a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable

noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made”).

The standard of proof that must be established to obtain a recovery of lost profits against the Government is subject to some debate. In *Tektronix, Inc. v. United States*, 552 F.2d 343, 351 (Ct. Cl. 1977) the Court of Claims stated that “[i]f lost profits are ever to be awarded under § 1498, it should be only after the strictest proof that the patentee would actually have earned and retained those sums….” The “strictest proof would be clear and convincing evidence. But more recently, in *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1575 (Fed. Cir. 1997), the Federal Circuit questioned whether the “strictest proof” statement in *Tektronix*, but noted that it was binding precedent until overruled. 113 F.3d at 1576. -Ultimately, the *Gargoyles* court avoided addressing the appropriateness of the “clear and convincing” standard because it found that Gargoyles argument would fail even under the “reasonable probability” standard that it championed. 113 F.3d 1576-77.

Here, Linick will be unable to meet his burden of demonstrating that the secrecy order caused him damage regardless of the standard employed. The evidence will demonstrate that Linick cannot prove the second and third factors, *i.e.*, Linick cannot establish that the secrecy orders were a significant cause of any injury, nor can Linick establish the quantum of any damages resulting from imposition of the secrecy orders. As we understand Linick’s claim, he claims three forms of damages, which for purposes of this analysis, consist of “interference with [his] right to compete in the market”; “interference with business opportunities”; and “loss of foreign patent rights.”

### A. Alleged Interference with [His] Right to Compete in the Market and Loss of Business Opportunity

The first and second alleged "injuries" are inconsequentially different. For example, in describing both his "right to compete" and his "loss of business opportunity" claims, Linick relies on his inability to form "business alliances." As to either of these claims, Linick makes an incorrect assumption: he assumes that he has a "right" to make and use the invention (or to license others to do so).

A "Patent rights exist only by virtue of statute." *Sears Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 n.5 (1964) (citing *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 658 (1834)). The statute that generally defines the nature of the patent grant is 35 U.S.C. § 154(a), which provides:

> (1) Contents. – Every patent shall contain a short title of the invention and a grant to the patentee, his heirs or assigns, of the r*ight to exclude others from making, using, offering for sale, or selling the invention throughout the United States ….*

(emphasis added). The exclusive rights are further defined by the exclusive rights granted in 35 U.S.C. § 271.

The Supreme Court provided the quintessential statement of the patent property right in *Bloomer v. McQuewan*, 55 U.S. (14 How.) 539, 548-52 (1856).

> The franchise which the patent grants, consists altogether in the right to *exclude* every one from making, using, or vending the thing patented, without the permission of the patentee…

(emphasis added). And, as the Court has stated: "whenever this court has had occasion to speak, it has decided that an inventor receives from a patent the right to exclude others from its use for the time prescribed in the statute." *Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 425 (1908); *see also Bauer & Cie v. O'Donnell*, 229 U.S.

1, 9-10 (1913) ("The [Patent Act] secure[s]to the inventor the exclusive right to make, use, and vend the thing patented, and consequently to prevent others from exercising like privileges without the consent of the patentee.") (citing *Bloomer*); *Zenith Radio Corp. v. Hazeltine Res. Inc.*, 395 U.S. 100, 135-36 (1969) ("A patentee has the exclusive right to manufacture, use, and sell his invention…; [t]he heart of his legal monopoly is the right to invoke the State's power to prevent others from utilizing his discovery without his consent.…" (citations omitted)).

As the foregoing cases make abundantly clear, the right granted the patentee (and therefore extended to the patent applicant by the Invention Secrecy Act, is the right to exclude *others from making the invention*. Neither the patent nor the patent application under secrecy order grants any right to *affirmatively participate* in the market.

Thus, Linick never had – and does not have today – a "right" to compete in the marketplace or to sell his engineering services.

### B. Asserted Loss of Foreign Rights

Linick also asserts that as a result of the secrecy orders, he lost his ability to file foreign patent applications and had to abandon his corresponding Patent Cooperation Treaty (PCT) Application. This argument is flawed both factually and legally because the imposition of the secrecy order on the '215 Application did not require abandonment of the PCT application, the secrecy order only required that the applicant notify the Patent and Trademark Office of the pending PCT application. As the secrecy order states:

> Any other patent application already or hereafter filed in the U.S. or any foreign country which contains any significant part of the subject matter of the above-identified patent application also falls within the scope of this

> Order. If such other patent application is not currently under a Secrecy Order imposed by the U.S. Patent and Trademark Office, it and the common subject matter must be *brought to the immediate attention* of [the]
>
> Director, Special Laws Administration,
> Attention: Licensing and Review,
> U.S. Patent and Trademark Office…."

(emphasis added). That a PCT application must be brought to the "immediate attention" of an official is not to say that the application must be abandoned. Certainly, in this case, it would be entirely possible that Linick may have been able to have received a license to file in at least the NATO countries (i.e., Canada and western Europe) and possibly other countries had he followed the direction of the secrecy order and sought approval from the Patent and Trademark Office.

## II. ANY INJURY WAS NOT CAUSED BY THE SECRECY ORDERS

The applicant has the burden to show the damaged caused by the secrecy order and the damages flowing therefrom. *Constant v. United States*, 16 Cl. Ct. 629, 636 (1989) *(Constant II)*, *aff'd* 884 F.2d 1398 (Fed. Cir. 1989), *cert. denied* 493 U.S. 1002 (1989). "Clear evidence of a potential or existing market for the invention disclosed" is necessary to prove that damages were caused by the secrecy order. *Cf. Haynes v. United States*, 1998 WL 852502, at *3 (Fed. Cir. Jan. 4, 1998) (nonprecedential) (discussing why evidence about the demand, quality and success of related patents and articles embodying related articles was not enough to show clear evidence of a potential or existing market for the application under secrecy order).

Recovery is not permitted where damages are "purely speculative." *Constant I*, 617 F.2d at 244. "Real concrete evidence of damages," "actual damages," "proven

damages," or "perhaps a greater degree or proof or ability to prove damages" would be necessary to recover under section 183.[1] *Id.* Plaintiffs are required "to adduce concrete evidence of damages, not that damages be proved only by reference to earnings after a patent is issued." *Lear Sigler, Inc.*, 225 Ct. Cl. at 667.

The requirement that damages be proved beyond "speculation" is, of course, not new to patent law. In interpreting 28 U.S.C. § 1498 – which provides compensation for the Government's use of issued patents – the Federal Circuit has made clear that the claimed compensation must be provided beyond speculation. *See Dow Chemical Co. v. United States*, 226 F.3d 1334, 1348 (Fed. Cir. 2000). In *Dow*, the trial court awarded damages based on the percentage decline of private property values that would have resulted "but for" use of the patented method for controlling underground mine subsidence. However, the Federal Circuit found that plaintiff's calculations were "speculative" because it had little relation to what willing buyer and seller would agree to in the "real world." *Dow Chem.* 226 F.3d at 1348; *see also Constant I*, 617 F.2d at 244; *cf. Haynes*, 1998 WL 852502, at *5 (decision by the trial court in which the court determined that "any assumption that [the inventor] sustained damage as a result of the secrecy order would be entirely speculative").

## III. THE ACCRUAL DATE IS ALSO SPECULATIVE

Section 183 allows an inventor who otherwise qualifies to recover damages "beginning at the date the applicant is notified that … his application is otherwise in

---

[1] It is unclear which of these standards would be applicable: no reported case has ever found that a plaintiff had proved damages related to the imposition of the secrecy order, without also finding that the claimant had demonstrated infringement.

condition for allowance … to apply … for compensation….” 35 U.S.C. § 183. The difficulty in this case is that the secrecy order on ‘215 Application was imposed on August 14, 2002. But plaintiff has not alleged and cannot establish when the alleged injury occurred.

Linick has alleged that he made overtures to several companies and foreign governments, as well as to the United States Army and Marine Corps. These events span a 12 year period from 1999 to 2011. However, he has never stated which of these events resulted in damage. These allegations, again, are too speculative to be useful to the Court. *Constant I*, 617 F.2d at 244.

## IV. MEDICAL ILLNESS IS AN INDEPENDENT CAUSE OF LINICK'S INABILITY TO ENGAGE IN "BUSINESS OPPORTUNITIES"

An insuperable obstacle to Linick's damage claim is his own health. As discussed above, the Court must determine whether the intervention of the secrecy order was a "significant cause" of the injury claimed. *Constant I*, 617 F.2d at 244; *cf. Haynes*, 1998 WL 852502, at *3 (noting that business failed, at least in part, because of the decline in the stock market and because the inventor diverted time from his business to attend law school).

## V. LINICK'S CLAIMED COMPENSATION IS ALSO SPECULATIVE

As for the quantum of compensation sought, Linick asserts that he should be paid the same amount that he was paid by Bofors for the three earlier patents that he assigned to Bofors between 1995 and 1997. This claim is again too speculative to withstand scrutiny. *See Constant I*, 617 F.2d at 244.

Linick's claim presumes that there is no difference between the 1995-1997 sales market and the market realities during and after 2002. Linick has not and cannot demonstrate the conditions today are substantially the same as when Bofors entered into the earlier agreements.

As we pointed out in Section I, the burden of proving compensation is substantial. Since, Linick is not claiming use, a reasonable royalty analysis is inappropriate. *Hughes Aircraft Co. v. United States*, 86 F.3d 1566, 1572 (Fed. Cir. 1996) (under § 1498, "the preferred manner of reasonably and entirely compensating the patent owner is to require the government to pay a reasonable royalty for its license."), *vacated on other grounds and remanded,* 520 U.S. 1183 (1997), *reinstated*, 140 F.3d 1470 (Fed. Cir. 1998); *see also, Decca Ltd. v. United States*, 640 F.2d 1156, 1166 (Ct. Cl. 1980). Instead, he must prove the damages that he suffered and establish the value of that damage.

Linick's damage claim is speculative. He simply throws out a number from a prior transaction, without any analysis as to how the prior transaction is similar to the present situation. As noted above, Linick cannot provide the type of "clear and convincing" evidence that should be required for proof of lost profits. *Tektronix, Inc.*, 552 F.2d at 351 (requiring the "strictest proof"). Indeed, Linick's evidence will fail to establish, even by a mere preponderance, that Mr. Linick was likely to have sold the patents in suit.

Finally, when calculating damages, interest claims against the government are not permitted. *Farrand Optical Co. v. United States,* 325 F.2d 328, 335 (2d Cir. 1963).

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN FARGO
Director

OF COUNSEL:

KATE P. RYZOC
Attorney
Department of Justice

*s/Gary L. Hausken*
GARY L. HAUSKEN
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D. C. 20530
Telephone: (202) 307-0342
Facsimile: (202) 307-0345

September 26, 2011

Attorneys for the United States